WILLIE HARRELL *et al.*, Plaintiffs-Appellees, v. RELIABLE INSURANCE COMPANY, Defendant-Appellee (Safeway Insurance Company, Defendant-Appellant; Illinois Insurance Guaranty Fund, Intervenor-Appellee).

First District (3rd Division) No. 1—90—1416

Opinion filed March 9, 1994.

Parillo, Weiss & O'Halloran, of Chicago (Keely Truax, of counsel), for appellant.

Brody, Gore, Fineberg & Wikoff, Ltd., of Chicago (Marcus J. Nunes and Leon M. Fineberg, of counsel), for appellees Illinois Insurance Guaranty Fund and Reliable Insurance Company.

JUSTICE CERDA delivered the opinion of the court:

The plaintiffs, Willie Harrell and Lela Harrell, filed a declaratory judgment action on July 23, 1986, seeking to determine the amount of uninsured motorist coverage available under insurance policies issued to them by the defendants, Reliable Insurance Company (Reliable) and Safeway Insurance Company (Safeway). Reliable subsequently became insolvent and the Illinois Insurance Guaranty Fund (the Fund) was allowed to intervene in the lawsuit. The trial court then granted summary judgment in favor of the Fund, finding that Safeway was obligated to provide its policy limit of $15,000 in uninsured motorist coverage. Safeway has appealed, contending that the trial court erred in determining that Safeway, rather than the Fund, was obligated to provide the portion of coverage originally allocated to the now-insolvent Reliable. We affirm.

The Fund claims that, where the plaintiff pedestrian is injured by an uninsured motorist and the plaintiffs have two uninsured motorist insurance policies on the date of the accident and subsequently one of the insurance companies becomes insolvent, the policy limits of the solvent insurance company must be exhausted before the assets of the Fund can be reached.

Plaintiff Willie Harrell was struck as a pedestrian by an uninsured motorist on March 31, 1985. At the time of the accident, Willie owned a vehicle insured by Reliable, and his wife Lela owned a vehicle insured by Safeway. Both policies provided uninsured motorist coverage in the amount of $15,000, and both contained identical "other insurance" clauses which stated, in pertinent part:

"[I]f the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

The plaintiffs filed a complaint for declaratory judgment against Reliable and Safeway seeking a determination of the amount of uninsured motorist coverage provided under both policies. Motions for summary judgment were filed by the plaintiffs and both defendants. The court granted Reliable's motion for summary judgment, finding that pursuant to the "other insurance" clauses, Reliable and Safeway each owed the plaintiffs $7,500 in coverage. Subsequently, Reliable became insolvent and the Fund filed its petition to intervene in the lawsuit.

The trial court allowed the Fund to intervene and file a complaint for declaratory judgment. The complaint stated that Reliable had been placed into liquidation and the Fund was assuming its obligations subject to the provisions of article XXXIV of the Illinois Insurance Code (Code) (Ill. Rev. Stat. 1991, ch. 73, par. 1065.82 *et seq.*). The complaint further stated that the Code requires a person bringing a claim against the Fund to first exhaust all his rights under any provision in any other insurance policy which may be applicable to the claim. (Ill. Rev. Stat. 1991, ch. 73, par. 1065.96(a).) The Fund's complaint asserted that because Reliable was insolvent, it no longer constituted "other insurance" for purposes of prorating the $15,000 uninsured motorist coverage afforded by the Safeway policy. The Fund asked the court to declare that Safeway owed the plaintiffs the full $15,000 of uninsured motorist coverage provided for in its policy and that the Fund had no obligation to provide coverage under the Reliable policy. The trial court granted the Fund's motion for summary judgment and determined that Safeway owed the plaintiffs $15,000 in coverage.

On appeal, Safeway contends that the trial court erred in determining that it, rather than the Fund, was obligated to provide the $7,500 in coverage originally allocated to Reliable.

In *Lucas v. Illinois Insurance Guaranty Fund* (1977), 52 Ill. App. 3d 237, 239, 367 N.E.2d 469, this court found that "[t]he intention of the legislature in establishing the Illinois Guaranty Fund was to protect the public from losses arising from the insolvency of Illinois insurers." All insurers transacting business in this State are required to contribute to the Fund in direct proportion to their premium income. (Ill. Rev. Stat. 1991, ch. 73, par. 1065.87—6.) Because all insurers must contribute, it is the philosophy of the Fund to have all potential claims against the Fund's assets reduced by a solvent insurer, and not the Fund, whenever possible. (*Pierre v. Davis* (1988), 165 Ill. App. 3d 759, 760, 520 N.E.2d 743.) To this end, section 546(a) of the Code provides in pertinent part:

> "Any insured or claimant having a covered claim against the Fund shall be required first to exhaust his rights under any provision in any other insurance policy which may be applicable to the claim." Ill. Rev. Stat. 1991, ch. 73, par. 1065.96(a).

Safeway argues that the plaintiffs' rights under their policy with Safeway must be determined as of the date of the accident rather than the date Reliable became insolvent. On the date of the accident, Reliable was solvent and provided uninsured motorist coverage similar to that provided by Safeway. Therefore, under the terms of Safeway's "other insurance" clause, each company was liable for one-half of the coverage limits. According to Safeway, Reliable's subsequent insolvency does not affect the amount of coverage owed by Safeway, and the consequences of the insolvency should be borne by the Fund.

The parties agree that there seems to be no Illinois case law on the issue of allocating responsibility among collateral insurers of the same risk when one of the insurers becomes insolvent and its obligations are taken up by the Fund.

The case of *Spearman v. State Security Insurance Co.* (1978), 57 Ill. App. 3d 393, 372 N.E.2d 1008, is helpful. In that case the issue was whether an insured must either first file a claim under the uninsured motorist provisions of his insurance policy or proceed against the Fund. That court pointed out that requiring the plaintiff to proceed first against the Fund would be contrary to the intent of the legislature. (*Spearman*, 57 Ill. App. 3d at 395.) The court reasoned that the plaintiff paid a premium to buy uninsured motorist coverage and that the insurance company cannot accept the money and then limit its liability by arguing that plaintiff should make a claim under the Fund rather than her insurance company. *Spearman*, 57 Ill. App. 3d at 395.

Another case that sheds light on the issue is the case of *Herriford v. Boyles* (1990), 193 Ill. App. 3d 947, 952-53, 550 N.E.2d 654, which

stated that under the provisions of section 546(a) of the Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 1065.96(a)), a claimant cannot recover from the Fund unless he first recovers any amounts available under his own insurance policy.

The Fund cites a decision of the Kentucky Supreme Court, *Davis v. Home Indemnity Co.* (Ky. 1983), 659 S.W.2d 185, in support of its position. The plaintiff in *Davis* was injured by a defendant who was insured by several insurance companies. The trial court allocated coverage among the insurers in a declaratory judgment action. At the time for collection on the judgments, one of the insurance companies had become insolvent and the Kentucky Insurance Guaranty Association was joined as a party. The trial court entered a judgment against the Association, but was reversed by the Kentucky Supreme Court, which held that the prior declaratory judgment was a prospective allocation among the insurers based on the assumption that all were solvent. (*Davis*, 659 S.W.2d at 187.) The subsequent insolvency of one of the insurers rendered the prior allocation invalid and necessitated a reassessment of liability among the remaining solvent insurers. *Davis*, 659 S.W.2d at 188-89.

In deciding the case of *Pierre v. Davis* (1987), 165 Ill. App. 3d 759, 520 N.E.2d 743, the court held:

> "It is clear that the legislature did not want the assets of the Fund depleted to reimburse solvent insurance companies for payments made to claimants or their insured under policies for which they received a premium. It is also clear that the legislature intended to protect individual insureds of the insolvent company from claims for reimbursement by the solvent insured. Therefore, it would counteract the purposes of the Fund to allow a solvent insurer to be reimbursed by proceeds from the Fund." *Pierre*, 165 Ill. App. 3d at 761.

The reasoning of the *Pierre* case comports with the Illinois legislature's intention that, whenever possible, potential claims against the Fund's assets should be reduced by a solvent insurer, rather than the Fund. Insurance associations such as the Fund are created for the purpose of providing a limited form of protection to the public and not to insurance companies. (See *Ross v. Canadian Indemnity Insurance Co.* (1983), 142 Cal. App. 3d 396, 404-05, 191 Cal. Rptr. 99, 103-04.) In our view, the trial court properly determined that Safeway must provide the full amount of coverage stated in its policy.

In reaching this conclusion, we reject Safeway's contention that the disposition of this cause is controlled by the decision in *Putnam v. New Amsterdam Casualty Co.* (1970), 48 Ill. 2d 71, 269 N.E.2d 97. It

is true that the court in *Putnam* distinguished between "available" and "collectible" insurance in the context of interpreting the terms of a specific insurance policy. However, it did not address the question of whether a subsequent change in circumstances, such as the insolvency of a collateral insurer, altered the availability of coverage under a policy. As such, *Putnam* is inapposite to the case at bar.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

TULLY, P.J., and RIZZI, J., concur.